UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
SCARSO ENTERPRISES, INC., *et al.*,      :
                                          :  Case No. 1:19-cv-02927
        Plaintiffs,                   :
                                          :
                                          :
vs.                                       :
                                          :  OPINION & ORDER
HONOR YOGA MANAGEMENT,                    :  [Resolving Doc. 14]
LLC, *et al.*,                            :
                                          :
        Defendants.                   :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Plaintiffs Rinette Scarso and Scarso Enterprises Inc. (jointly, "Plaintiff Scarso") sue Honor Yoga Management LLC[1] and BodeTree LLC[2] for (1) violations of Ohio's Business Opportunity Purchasers Protection Act, (2) fraud, (3) breach of contract, and (4) corporate veil piercing.[3] Plaintiff Scarso claims that Defendants misrepresented the financial viability of franchise opportunities and the support level that Defendants would provide to Plaintiff Scarso's franchise.[4] Defendant Honor Yoga moves the Court to stay the case pending arbitration.[5]

    For the following reasons, this Court **GRANTS** Defendant Honor Yoga's motion and **STAYS** the case pending arbitration.

---

[1] Plaintiff also sues Honor Yoga's principal, Maria Parrella-Turco. Doc. 1-1 at 2. The Court refers to Honor Yoga and Parrella-Turco jointly as "Honor Yoga."
[2] Plaintiff also sues BodeTree's principal, Matthew Ankrum. *Id.* at 2. The Court refers to BodeTree and Ankrum jointly as "BodeTree."
[3] *Id.*
[4] *Id.* at 4-8.
[5] Doc. 14. Plaintiff opposes. Doc. 18. Defendant Honor Yoga replies. Doc. 19.

Case No. 1:19-cv-02927
Gwin, J.

## I. Background

Defendant Honor Yoga sells business opportunity plans that require franchisees to operate yoga studios under Honor Yoga's trade name.[6]  Honor Yoga sells its plans through Defendant BodeTree, that specializes in business opportunity plan sales.[7]

According to the complaint, in February 2018, Plaintiff Scarso entered into discussions with BodeTree and Honor Yoga to buy business opportunity plans.[8]  Plaintiff Scarso and Defendant Honor Yoga ultimately agreed to license Scarso to develop three yoga studio franchises.[9]  Scarso and Honor Yoga signed two contracts: the "multi-unit development agreement" and the "franchise agreement."[10]  The two contracts both contained arbitration provisions.[11]

Defendant BodeTree was not a party to these two contracts.

After signing the contracts, Plaintiff Scarso opened one of the three agreed upon yoga studio franchises.[12]  With her complaint, Plaintiff says the studio operated well below the expectations represented by Defendants' pre-contract representations.[13]  Accordingly, Plaintiff attempted to negotiate a resolution with Honor Yoga, but Honor Yoga would not negotiate.[14]

---

[6] Doc. 1-1 at 3.
[7] *Id.*
[8] *Id.* at 4.
[9] *Id.* at 5-7; Doc. 14-1 at 5-6.
[10] Doc. 1-1 at 5-7; Doc. 14-1 at 5-6.
[11] *See* Doc. 14-3 ¶ 14.4; Doc. 14-4 ¶ 12.4.
[12] Doc. 18-1 ¶ 7.
[13] *Id.*
[14] *Id.*

Case No. 1:19-cv-02927
Gwin, J.

On November 14, 2019, Plaintiff Scarso mailed a letter to Defendant Honor Yoga purporting to rescind their two contracts under Ohio Revised Code 1334.09(A)(1)(a).[15] Plaintiff claims the statute allows for unilateral contract rescission.[16]

The next day, Plaintiff Scarso sued Defendants Honor Yoga and BodeTree in the Cuyahoga County Court of Common Pleas.[17]

On December 19, 2019, Defendant BodeTree removed the case to federal court.[18]

On January 16, 2020, Defendant Honor Yoga moved the Court to stay the case pending arbitration.[19]

## II. Discussion

In its motion to stay, Honor Yoga argues that the Court should stay the case because the two contracts' arbitration provisions are valid and Plaintiff's claims fall squarely within the arbitration agreements' scope.[20]  Honor Yoga also asks for the Court to declare that "the venue provision [providing for venue in New Jersey] is valid and enforceable."[21]  Notably, Honor Yoga does not ask the Court to compel arbitration—just for a stay pending arbitration.

The Court will address Honor Yoga's two requests in turn.

### A.  Whether to Stay the Case

Defendant Honor Yoga moves to stay the case under the Federal Arbitration Act ("FAA").  FAA Section 2 provides that written provisions to settle controversies by

---

[15] Doc. 14-5.
[16] *See* Doc. 18 at 3.
[17] Doc. 1-1.
[18] Doc. 1.
[19] Doc. 14-1 at 5.
[20] *Id.* at 9-14.
[21] *Id.* at 17.

Case No. 1:19-cv-02927
Gwin, J.

arbitration shall be "valid, irrevocable, and enforceable."[22] The FAA establishes a federal policy favoring arbitration that requires courts to "rigorously enforce agreements to arbitrate."[23]

FAA Section 3 provides that a court shall, on application of one of the parties, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," provided that the court is "satisfied that the issue involved in [the] suit . . . is referable to arbitration under [the] agreement."[24]

A dispute is "arbitrable" if there is a "valid agreement to arbitrate" and the "specific dispute falls within the substantive scope of that agreement."[25] A court "must engage in a limited review to determine whether dispute is arbitrable."[26]

### 1. Validity of the Agreement to Arbitrate

In determining whether the dispute is arbitrable, the Court first considers whether the parties agreed to arbitrate.

#### a. BodeTree Did Not Agree to Arbitrate.

As described above, only Plaintiff Scarso and Defendant Honor Yoga signed the contracts that included the relevant arbitration provisions;[27] Defendant BodeTree was not a party to these contracts.

---

[22] 9 U.S.C. § 2.
[23] *Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987).
[24] 9 U.S.C. § 3.
[25] *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).
[26] *Id*.
[27] Doc. 1-1 at 5-7; Doc. 14-1 at 5-6.

-4-

Case No. 1:19-cv-02927
Gwin, J.

If a company is not a party to a contract, then the company is not directly subject to that contract's arbitration clause.[28] However, non-signatories may nonetheless be bound to an arbitration agreement under ordinary contract and agency principles.[29]

Here, no party argues that Defendant BodeTree is bound—either directly or through ordinary contract principles—by the arbitration clauses in Plaintiff's and Honor Yoga's two contracts.

Defendant Honor Yoga observes that Honor Yoga and BodeTree have their own contract with an arbitration clause—separate from the arbitration clauses between Honor Yoga and Plaintiff.[30] This may or may not be true, but such an agreement would not make BodeTree subject to the arbitration agreement between Honor Yoga and Plaintiff.

Therefore, BodeTree is not subject to the arbitration clauses in the contract between Honor Yoga and Plaintiff Scarso.

### b. Plaintiff Scarso and Defendant Honor Yoga Agreed to Arbitrate.

Unlike BodeTree, Plaintiff Scarso and Defendant Honor Yoga did sign the two contracts containing the arbitration clauses.[31]

---

[28] *Rossisa Participacoes S.A. v. Reynolds & Reynolds Co.*, No. 3:18-CV-00297, 2019 WL 4242937, at *6 (S.D. Ohio Sept. 6, 2019); *see United Steelworkers of Am., Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972) ("[A]rbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration."); *see also Mason v. Mason*, 2017-Ohio-5787, 2010 WL 11534347 at ¶ 3 (Ohio Ct. App. 2017) ("[A]rbitration is a matter of contract and, despite the strong policy in its favor, a party cannot be compelled to arbitrate any dispute that he has not agreed to submit."); *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("[W]hile there is a strong and liberal federal policy favoring arbitration agreements, such agreements must not be so broadly construed as to encompass claims and *parties* that were not intended by the original contract." (internal citation and quotation marks removed) (emphasis added)).

[29] *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990); *see also Javitch*, 315 F.3d at 629 (citing *Thomson–CSF*, 64 F.3d at 776).

[30] Doc. 34.

[31] Doc. 1-1 at 5-7; Doc. 14-1 at 5-6.

-5-

Case No. 1:19-cv-02927
Gwin, J.

"For a valid . . . arbitration agreement to exist, there must be mutual assent, an offer and acceptance of the offer, and consideration."[32]

Here, neither party contests that there was mutual assent, an offer and acceptance of the offer, and consideration. Therefore, the Court concludes that Plaintiff Scarso and Defendant Honor Yoga have a valid agreement to arbitrate.

Plaintiff seemingly relies upon an argument that the contracts "no longer exist" because Plaintiff "rescinded" the contracts under Ohio's Business Opportunity Purchasers Protection Act.[33]

In the Court's limited task of determining arbitrability for the motion to stay, the Court considers only whether the parties agreed to the arbitration clause, rather than whether the contract as a whole is valid.[34] "[T]herefore, the party opposing the petition to compel arbitration must state a 'well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement,* that would provide grounds for the revocation of the agreement to arbitrate.'"[35]

Here, Plaintiff's contract rescission argument challenges the validity of the contract as a whole. Plaintiff does not squarely challenge the arbitration clauses' validity. The

---

[32] *Federico v. Chipotle Mexican Grill, Inc.*, No. 1:20 CV 27, 2020 WL 1140069, at *2 (N.D. Ohio Mar. 9, 2020); accord *Dantz v. Am. Apple Grp., LLC*, 123 Fed. Appx. 702, 706 (6th Cir. 2005) (determining enforceability of arbitration agreement under Ohio contract law).
[33] Doc. 18 at 1, 3-5.
[34] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04 (1967); accord *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 (2006); *Teamsters Local Union 480 v. United Parcel Service, Inc.*, 748 F.3d 281, 288–89 (6th Cir. 2014) (recognizing that the presumption in favor of arbitration extends even to attacks on the validity of the contract as a whole and that only questions going to the "formation" of the arbitration clause itself—i.e., whether the parties ever agreed to the arbitration clause in the first place-are for the courts to decide); *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889–90 (6th Cir. 2002).
[35] *Great Earth Companies,* 288 F.3d at 890 (quoting *Arnold,* 920 F.2d at 1278).

Case No. 1:19-cv-02927
Gwin, J.

validity of the contract as a whole is a question for the arbitrator to consider—not the Court.

Therefore, the Court finds a valid agreement to arbitrate between Plaintiff Scarso and Defendant Honor Yoga.

### 2. Scope of the Agreement to Arbitrate

The next step in determining whether Plaintiff Scarso and Honor Yoga's dispute is arbitrable is assessing the scope of the agreement, that is, which of Plaintiff's claims are subject to the agreement.

Under the terms of the parties' multi-unit development agreement, Plaintiff agreed to arbitrate any "disputes and claims relating to this Agreement, the rights and obligations of the parties hereto, or any other claims or causes of action relating to the making, interpretation, or performance of either party under this Agreement."[36] The franchise agreement contains similarly broad language.[37] Such language indicates the parties' explicit intention to arbitrate.

"When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration."[38] "[O]nly an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by arbitrators."[39]

---

[36] Doc. 14-3 ¶ 14.4. The one exception to this provision was that Honor Yoga could also seek injunctive relief in certain circumstances. *Id.* ¶ 14.3.
[37] *See* Doc. 14-4 ¶ 12.4.
[38] *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).
[39] *Id.* (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)).

Case No. 1:19-cv-02927
Gwin, J.

Plaintiff Scarso's four claims against Defendant Honor Yoga—for (1) violations of Ohio's Business Opportunity Purchasers Protection Act, (2) fraud, (3) breach of contract, and (4) corporate veil piercing—stem from Plaintiff's agreements with Honor Yoga. As such, these four claims fall within the plain language of the arbitration agreements and are subject to binding arbitration.

In sum, the Court finds that Plaintiff Scarso and Defendant Honor Yoga have valid agreements to arbitrate, and Plaintiff's four claims fall within the scope of these agreements.

### B. The Enforceability of the New Jersey Venue Provision

Having found Plaintiff's claims against Honor Yoga subject to resolution by binding arbitration, the Court considers Defendant Honor Yoga's request for the Court to declare the contracts' venue provisions to be enforceable.[40]

As noted above, Honor Yoga does not ask the court to compel arbitration in the contracts' provided venue of New Jersey. Rather, Honor Yoga asks only for the court to declare that the venue provision is enforceable. The reason for Honor Yoga's approach may be that "the Federal Arbitration Act prevents federal courts from compelling arbitration outside of their own district."[41] "[W]here the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4."[42]

This Court cannot compel a New Jersey arbitration.

---

[40] Doc. 14-1 at 11-12.
[41] *Inland Bulk Transfer Co. v. Cummins Engine Co.,* 332 F.3d 1007, 1018 (6th Cir. 2003).
[42] *Mgmt. Recruiters Int'l, Inc. v. Bloor,* 129 F.3d 851, 854 (6th Cir. 1997).

Case No. 1:19-cv-02927
Gwin, J.

Defendant Honor Yoga says that its arbitration agreements with Plaintiff require that Plaintiff's claims be arbitrated in New Jersey.[43] Plaintiff contends that the contract clauses providing for venue in New Jersey are unenforceable because they run afoul of an Ohio statute that voids forum-selection clauses in franchise agreements.[44]

To determine the enforceability of forum-selection clauses, the Court looks to federal law.[45] "The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside."[46]

When evaluating forum-selection clause enforceability, the Court considers the following factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust."[47] The party opposing the forum-selection clause bears the burden of showing that the clause should not be enforced.[48]

---

[43] Doc. 14-1 at 15-16.
[44] O.R.C. § 1334.06(E). Within the same statutory scheme related to franchise agreements, the Ohio Revised Code provides, "any venue or choice of law provision that deprives a [franchisee] who is an Ohio resident of the benefit of those sections is contrary to public policy and is void and unenforceable." O.R.C. § 1334.15(B).
[45] *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).
[46] *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).
[47] *Wong*, 589 F.3d at 828 (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999).
[48] *Shell v. R.W. Sturge*, Ltd., 55 F.3d 1227, 1229 (6th Cir. 1995).

Case No. 1:19-cv-02927
Gwin, J.

Here, all three factors favor enforceability. First, there are no allegations of fraud as to the forum-selection provision.[49] Second, there are no allegations that the agreed to forum would be ineffective or unfair. Third, there are no allegations that the forum would be inconvenient.

Plaintiff's argument against enforceability—that an Ohio statute precludes it—is unavailing. Plaintiff specifically agreed that New Jersey law, rather than Ohio law, would control disputes arising out of the contract.[50]

Therefore, Plaintiff Scarso has failed to meet the burden of showing that the forum-selection clause should not be enforced.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants Honor Yoga and Maria Parrella-Turco have a valid and enforceable arbitration agreements with Plaintiffs Rinette Scarso and Scarso Enterprises. The agreements' venue provisions, providing for venue in New Jersey, are also valid and enforceable.

Defendants BodeTree and Matthew Ankrum are not subject to Plaintiff's and Honor Yoga's arbitration agreements.

Accordingly, this Court **GRANTS** Defendant Honor Yoga's motion. The Court **STAYS** the case pending arbitration in accordance with the terms of Plaintiff's and Honor Yoga's arbitration agreements and the Court's ruling. Because the arbitration between

---

[49] Plaintiff's general fraud claim is not enough. *See Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) ("[U]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause." (quoting *Moses v. Bus. Card Express*, 929 F.2d 1131, 1138 (6th Cir.1991))).

[50] *See* Doc. 14-3 ¶ 14.4; Doc. 14-4 ¶ 12.2.

Case No. 1:19-cv-02927
Gwin, J.

Plaintiff Scarso and Defendant Honor Yoga will necessarily affect Plaintiff's claims against BodeTree, the matter is stayed as to BodeTree as well.

The parties are to notify the Court when arbitration has been completed and may either file additional motions or notify the Court that the case may be dismissed.

IT IS SO ORDERED.

Dated: May 14, 2020    *s/     James S. Gwin*
                       JAMES S. GWIN
                       UNITED STATES DISTRICT JUDGE